IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD BARBEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-714 |
| | § | |
| ALLISON TAYLOR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER ON PENDING MOTIONS

Several pending motions are ruled on in the Order that
follows.

I. Taylor's Motion to Dismiss

Defendant Allison Taylor moves to dismiss Plaintiff Donald
Barbee's ("Plaintiff") action pursuant to Fed. R. Civ. P. 12(b)(1)
and 12(b)(6) (Document No. 31). Plaintiff Barbee was adjudicated
a sexually violent predator ("SVP") under the Texas Civil
Commitment of Sexually Violent Predators Act ("SVP Act") and
civilly committed to the supervision of the State of Texas, Office
of Violent Sexual Offender Management ("OVSOM").[1]  Defendant
Allison Taylor ("Taylor") was the Executive Director of OVSOM when

---

[1] On June 17, 2015, Texas Governor Abbott signed into law
Senate Bill No. 746, which, *inter alia*, replaced the OVSOM with the
Texas Civil Commitment Office. *See* Act of May 18, 2015, 84th Leg.,
R.S., ch. 845, § 1, 2015 Tex. Sess. Law Serv. Ch. 845 (West).

this suit was filed.[2]  Plaintiff pleads that he is confined at a halfway house at the Southeast Texas Transitional Center ("STTC") in Houston, Texas, while receiving treatment for his behavioral abnormality.[3]  Plaintiff filed this suit under 42 U.S.C. § 1983 *pro se* and was granted leave to proceed *in forma pauperis*.[4] Plaintiff's First Amended Complaint alleges that the terms of his supervision and treatment at STTC, as imposed and implemented by Taylor and others, violate his civil rights.[5]

Plaintiff presents the following claims against Taylor:

Count I: Denial of substantive due process based on confinement of Plaintiff at STTC despite his civil commitment as "outpatient."[6]

Count II: Denial of substantive due process based on inadequate treatment which does not lead to release and is punitive.[7]

Count III: Denial of substantive and procedural due process based on the threat of possible arrest and

---

[2] Plaintiff's First Amended Complaint names Taylor as a defendant in her individual and official capacities. Document No. 16. On May 5, 2014, Taylor was replaced as Executive Director of OVSOM by Marsha McLane, who was automatically substituted as a defendant in this case for Taylor in her official capacity. Document No. 19. Thus, the only claims remaining against Taylor are individual capacity claims.

[3] Document No. 16.

[4] Document No. 3.

[5] Document No. 16.

[6] Id. at 22.

[7] Id. at 23.

2

criminal prosecution for technical violations of treatment requirements.[8]

Count IV: Denial of First Amendment rights to free speech and association based on restriction of Plaintiff's contact with family and friends unless approved by program specialist.[9]

Count V: Denial of Fifth Amendment privilege against self-incrimination based on requirement to take and pass polygraph exams.[10]

Count VI: Denial of First and Fourth Amendment privacy rights and substantive due process based on required penile plethysmograph testing.[11]

Count XI: Denial of Fourth Amendment right to privacy based on use of cameras in Plaintiff's sleeping quarters.[12]

Taylor moves to dismiss Plaintiff's claims for want of subject matter jurisdiction under Rule 12(b)(1), arguing that Plaintiff's claims are barred under the Rooker-Feldman doctrine. Taylor also moves to dismiss Plaintiff's claims under Rule (12)(b)(6), arguing that (1) the claims are barred by the Heck favorable-termination rule, (2) the civil commitment program has been found constitutional, (3) Taylor is entitled to qualified immunity, (4) Taylor was not personally involved in Plaintiff's allegedly

---

[8] Id. at 23-24.

[9] Id. at 24-25.

[10] Id. at 25-26.

[11] Id. at 26-27.

[12] Id. at 30-31.

unconstitutional treatment, and (5) Plaintiff fails to state a claim as to any of his specific causes of action.[13]

## II. Rule 12(b)(1)--Subject Matter Jurisdiction

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Cas. Co., 603 F.3d 290, 292 (5th Cir. 2010) (citations omitted). As such, the existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised by the district court on its own motion. See Nguyen v. Dist. Director, Bureau of Immigration and Customs Enforcement, 400 F.3d 255, 260 (5th Cir. 2005) (citations omitted). Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed along with other Rule 12 motions, the court should first consider the Rule 12(b)(1) motion. Id.

Taylor asserts that Plaintiff's claims are barred under the Rooker-Feldman doctrine because they challenge the validity of the state court's commitment order. The Rooker-Feldman doctrine bars

---

[13] Document No. 31.

4

an individual from filing a civil rights suit in federal court to attack a state civil judgment. *See* <u>Liedtke v. State Bar of Texas</u>, 18 F.3d 315, 317 (5th Cir. 1994) (citing <u>Rooker v. Fidelity Trust Co.</u>, 44 S. Ct. 149 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 103 S. Ct. 1303 (1983)). The <u>Rooker-Feldman</u> doctrine provides that when issues raised in a federal court are "inextricably intertwined" with a state judgment and the court is "in essence being called upon to review the state-court decision," the federal court lacks subject matter jurisdiction to conduct such a review. <u>Davis v. Bayless</u>, 70 F.3d 367, 375 (5th Cir. 1995); *see also* <u>In re Reitnauer</u>, 152 F.3d 341, 343 (5th Cir. 1998) ("In a nutshell, the [<u>Rooker-Feldman</u>] doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments.").

Taylor contends that the <u>Rooker-Feldman</u> doctrine deprives the Court of subject matter jurisdiction over Plaintiff's claims because Plaintiff's claims directly challenge the terms of Plaintiff's state court commitment order.[14] The Final Judgment and Order of Civil Commitment issued on March 18, 2005 by the 221st Judicial District Court of Montgomery County, Texas, provides among other things that Plaintiff shall "reside in a halfway house unless otherwise approved by the Council on Sex Offender Treatment" and "shall submit to periodic monitoring with a polygraph and a

---

[14] <u>Id.</u> at 5-6.

plethysmograph as directed by the case manager," and that
violations of the order may result in Plaintiff being charged with
a third degree felony.[15] Plaintiff's claim in Count I challenges
his confinement at the STTC, focusing on his designation as an
"outpatient," but his residence in a halfway house is mandated by
his commitment order. Plaintiff's claims in Counts V and VI
challenge Taylor's policy of requiring Plaintiff to submit to
polygraph and penile plethysmograph testing, but these tests are
likewise required by Plaintiff's commitment order. Because
Plaintiff's claims in Counts I, V, and VI are inextricably
intertwined with the requirements of Plaintiff's commitment order,
the Court lacks jurisdiction to review those requirements under the
Rooker-Feldman doctrine, and Counts I, V, and VI are dismissed for
lack of subject matter jurisdiction.

Taylor has not shown that Plaintiff's remaining claims are
inextricably intertwined with the validity of Plaintiff's civil
commitment order, such that this Court is in essence being asked to
review the state court's judgment of commitment. Plaintiff states
that he is not challenging his civil commitment order or any aspect
of the civil commitment proceedings; instead, he is only
challenging the conditions of his commitment as imposed by Taylor

---

[15] *See* Document No. 16, ex. A at 2-3 (Final Judgment and Order
of Civil Commitment). Plaintiff's commitment was upheld on appeal.
*See* In re Commitment of Barbee, 192 S.W.3d 835 (Tex. App.-Beaumont
2006).

and others.[16]  Because Plaintiff's remaining claims do not call upon the Court to review Plaintiff's civil commitment proceedings or the state court's determination that Plaintiff is subject to civil commitment, the Rooker-Feldman doctrine does not bar Plaintiff's claims against Taylor in Counts II-IV and XI.[17]

### III. Rule 12(b)(6)--Failure to State a Claim

Taylor moves to dismiss Plaintiff's claims on the ground that Plaintiff has failed to allege sufficient facts to state a plausible claim for relief.

---

[16] *See* Document No. 32 at 3-6 (arguing that Rooker-Feldman doctrine does not bar Plaintiff's claims against Defendant Dr. Nicholas Edd); Document No. 41 at 2 (incorporating this argument by reference in response to Taylor's motion to dismiss).

[17] Taylor also asserts that Plaintiff's claims are barred under Heck v. Humphrey, 114 S. Ct. 2364 (1994) because Plaintiff has not shown that he has exhausted available *habeas corpus* remedies.  In Heck, the Supreme Court held that a district court must generally dismiss a prisoner's complaint brought pursuant to 42 U.S.C. § 1983, if success in the civil rights action would necessarily imply the invalidity of the plaintiff's conviction or sentence. Id. at 2372.  Assuming, *arguendo*, that Heck applies to Plaintiff's civil commitment, the Heck rule does not bar Plaintiff's remaining claims for essentially the same reasons that the Rooker-Feldman doctrine is inapplicable:  success on the merits of Plaintiff's claim would not necessarily invalidate his civil commitment. *See* Heck, 114 S. Ct. at 2372-73 ("But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.") (emphasis in original); *see also* Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008) (Heck does not apply where "the factual basis for the conviction is temporally and conceptually distinct" from the asserted civil claims.").

A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. La Porte Construction Co. v. Bayshore Nat'l Bank, 805 F.2d 1254, 1255 (5th Cir. 1986). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right

8

to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-64 (citations and internal footnote omitted). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." <u>Harrington v. State Farm Fire & Cas. Co.</u>, 563 F.3d 141, 147 (5th Cir. 2009).

B.   <u>Analysis</u>

   1.   Personal Involvement

   Under § 1983, an individual may sue state actors to enforce federal statutory and constitutional rights. <u>Anderson v. Jackson</u>, 556 F.3d 351, 356 (5th Cir. 2009). To succeed on a § 1983 claim, an individual must prove that: (1) the conduct in question was committed by an individual acting under the color of state law; and (2) the conduct deprived the claimant of a constitutional right. <u>Kovacic v. Villarreal</u>, 628 F.3d 209, 213 (5th Cir. 2010). Section 1983 will not support a claim based on *respondeat superior* or vicarious liability. <u>Pierce v. Texas Dept. of Criminal Justice-Institutional Div.</u>, 37 F.3d 1146, 1150 (5th Cir. 1994). "Personal involvement is an essential element of a civil rights cause of action." <u>Thompson v. Steele</u>, 709 F.2d 381 (5th Cir. 1983). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that

causally result in plaintiff's injury." <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992) (citing <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987)); *see also* <u>Cozzo v. Tangipahoa Parish Council-President Gov't</u>, 279 F.3d 273, 289 (5th Cir. 2002) (Supervisory liability may apply under Section 1983 "'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'") (quoting <u>Thompkins</u>, 828 F.2d at 304 (internal quotations and citations omitted)).

Taylor argues that Plaintiff fails to state a claim because he does not allege facts demonstrating Taylor's personal involvement.[18] Taylor does not deny implementing the policies about which Plaintiff complains, but argues, without citing any legal authority, that those policies cannot give rise to individual capacity claims because Taylor enacted the policies in her official capacity.[19] However, both individual and official capacity claims may arise from a defendant's actions in her role as a public official. *See* <u>Turner v. Houma Mun. Fire & Police Civil Serv. Bd.</u>, 229 F.3d 478, 484 (5th Cir. 2000) ("The performance of official duties creates two potential liabilities, individual-capacity

---

[18] Document No. 31 at 11-13.

[19] <u>Id.</u> at 12.

liability for the person and official-capacity liability for the municipality."); *see also* <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002) (officials may be liable in their individual capacities for "implementing a policy that is itself a repudiation of constitutional rights and the moving force of the constitutional violation." (internal quotation marks and citation omitted)). Plaintiff's allegations that Taylor's policies are the moving force behind the allegedly unconstitutional conditions of his confinement and treatment are sufficient to establish Taylor's involvement in Plaintiff's alleged injuries.[20]   *See* <u>Mouille</u>, 977 F.2d at 929; <u>Cozzo</u>, 279 F.3d at 289.

   2.   Substantive Due Process

   Plaintiff alleges in Counts II and III violations of substantive due process based on his inadequate mental health treatment which does not give him a realistic opportunity for improvement, and the requirement that Plaintiff sign what he describes as restrictive "adhesion contracts," the violation of which subjects him to arrest and criminal prosecution.[21]   In ruling on Defendant Edd's motion to dismiss, the Court has already held

--------

   [20] Plaintiff also attaches as part of his pleading no fewer than seven policies related to his treatment which are signed by Taylor.  Document No. 16, exs. E, L, M, T, V, W, KK.

   [21] Document No. 16 at 23-24.  Count III also alleges a claim for violation of Plaintiff's procedural due process rights.

that Plaintiff fails to state a claim for violations of due process in Count III, and that claim is dismissed against Taylor for the same reasons.[22]

As for Count II, Taylor argues that Plaintiff's substantive due process claims are subject to dismissal because they are based on elements of his Order of Commitment, and therefore Taylor cannot have implemented the policies with the intent to cause injury to Plaintiff.[23]   Although the Order of Civil Commitment requires Plaintiff to "participate in and comply with a specific course of treatment" and follow written supervision requirements of his case manager, this broad language does not preclude Plaintiff from challenging Taylor's requirements that are not specifically

---

[22] Document No. 51 at 1-12 ("In Count III, however, Plaintiff essentially makes a broadside attack on all the rules of this treatment program, and charges that Defendant Edd and three other Defendants 'knew or should have known' that implementation of the rules was 'in violation of the Fourteen[th] Amendment's Substantive and Procedural Due Process Requirements.'   Plaintiff's resort to general notions of substantive due process, rather than identifying any specific unconstitutional prosecution of Plaintiff for a rules violation or other constitutional injury sustained by Plaintiff makes this claim conclusory and implausible.   The Supreme Court has recognized that the substantive due process framework should not be applied where a claim is covered by a specific constitutional provision.   See United States v. Lanier, 117 S. Ct. 1219, 1227 n.7 (1997) (clarifying prior holding in Graham v. Connor, 109 S. Ct. 1865 (1989).   Plaintiff in Count III has not identified any injury he suffered caused specifically by Defendant Edd by reason of the 'adhesion contracts' that cannot be separately analyzed under a specific constitutional provision, as Plaintiff later does in Count IX.").   This analysis applies equally to Plaintiff's allegations against Defendant Taylor in Count III.

[23] Document No. 31.

mandated by the commitment order.   Nor is Plaintiff required to establish that Taylor intended to cause him injury in order to state a substantive due process claim under the Fourteenth Amendment.   *See* <u>Youngberg v. Romeo</u>, 102 S. Ct. 2452, 2461 (1982) (involuntary civil committee has substantive due process right to "reasonable conditions of safety and freedom from unreasonable restraints" which entitles him "to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" and is violated when "the decision by the professional [providing treatment] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.").

3.   Liberty Interest

Taylor argues that Plaintiff's claims in Counts IV and XI fail because Plaintiff lacks a protected liberty interest under the First, Fourth, Fifth, and Fourteenth Amendments.[24]   Taylor's argument relies on a two-part test developed by the Fifth Circuit to determine when the imposition of additional conditions of parole violates a parolee's procedural due process rights.   *See* <u>Coleman v. Dretke</u>, 395 F.3d 216, 221-24 (5th Cir. 2004) (holding that state's

---

[24] Document No. 31 at 15-16.

13

imposition of sex-offender classification and treatment on parolee who had not been convicted of sex crime without any process was unconstitutional where classification and treatment were (1) stigmatizing and (2) qualitatively different from other conditions which might attend an inmate's release); Jennings v. Owens, 602 F.3d 652, 659 (5th Cir. 2010) (no violation of procedural due process where sex offender conditions were imposed on parolee who had prior sex offense conviction).

This test is inapposite to Plaintiff's claims. Taylor cites no authority to support her conclusory assertion that "sex parole conditions" are analogous to SVP civil commitment conditions. *See* Youngberg, 102 S. Ct. at 2461 ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."); Coleman, 395 F.3d at 221-22 (liberty interests may be circumscribed when an individual has been convicted of a crime, and parole is "an established variation on imprisonment of convicted criminals.") (quoting Morrissey v. Brewer, 92 S. Ct. 2593, 2598 (1972)). Furthermore, Counts IV and XI allege violations of Plaintiff's First Amendment free speech, free association, and privacy rights, not procedural due process violations. Taylor has not established that she is entitled to dismissal of Plaintiff's claims in Counts IV and XI.

14

4.   Qualified Immunity

Government officials who perform "discretionary functions" are entitled to the defense of qualified immunity from suits in their individual capacity.  Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  The doctrine of qualified immunity protects government officials sued pursuant to § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (internal quotation marks omitted).  The Fifth Circuit has emphasized the broad protections of qualified immunity, stating that it "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  DePree v. Saunders, 588 F.3d 282, 288 (5th Cir. 2009).

Once a defendant invokes the qualified immunity defense, the plaintiff bears the burden of showing its inapplicability.  Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009).  To satisfy that burden, a plaintiff must meet a two-prong test.  Id. "First, he must claim that the defendants committed a constitutional violation under current law."  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "Second, he must

15

claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 256 (citations, internal quotation marks, and alterations omitted). The objective unreasonableness inquiry requires examination of the defendant's belief that his or her actions were lawful under the particular circumstances. Bush v. Strain, 513 F.3d 492, 502 (5th Cir. 2008).

As the Fifth Circuit has noted, the qualified immunity defense "turns on the circumstances and motivations of the defendant, and it therefore ordinarily requires some evidentiary showing. [Qualified immunity] would rarely, if ever, justify dismissing a complaint in response to a bare Rule 12(b)(6) motion." Sims v. Adams, 537 F.2d 829, 832 (1976) (citing Stephenson v. Gaskins, 531 F.2d 765 (5th Cir. 1976); Imbler v. Pachtman, 96 S. Ct. 984, 990 n.13 (1976)). Thus, as to those claims of which Taylor has not shown she is entitled to dismissal, adjudication of Taylor's defense of qualified immunity should await Taylor's filing of an Answer with her affirmative defense(s) and an evidentiary motion.

IV. <u>Other Motions</u>

Also pending are Defendants Jauregui, Barnes, and Smith's Motion for Leave to File Amended Answer Out of Time (Document No. 47) and Plaintiff Barbee's Objections, Motion to Strike Defendants Jauregui, Barnes, and Smith's First Amended Answer, and Motion for Entry of Default Judgment Against the Defendants (Document No. 46).[25]

Plaintiff Barbee originally joined with nine other plaintiffs in filing this suit against Defendants Jauregui, Barnes, Smith, and others, and the Texas Attorney General answered for Jauregui, Barnes, and Smith on February 6, 2013.[26] The Court later severed Plaintiffs' claims, directing them each to file an amended complaint separately to plead their individual claims.[27] The Court's Memorandum and Order provided that Defendants Jauregui, Barnes, and Smith would have 21 days after their attorney was served with a Plaintiff's amended complaint to file an answer.[28] Plaintiff Barbee, after requesting and receiving an extension,

---

[25] Defendants filed a "Response to Plaintiff's Motion for Death Penalty Sanctions" in response to Plaintiff's motion. Document No. 48. Although Plaintiff did not file a separate response to Jauregui, Barnes, and Smith's Motion for Leave to File Amended Answer, his motion to strike the amended answer advances arguments that are responsive to Defendants' subsequent motion.

[26] Document No. 4.

[27] Document No. 8.

[28] <u>Id.</u> at 29.

17

filed his First Amended Complaint on July 10, 2014.[29]  Seven months

later, Defendants Jauregui, Barnes, and Smith filed their First

Amended Answer, followed by their Motion for Leave to File Amended

Answer Out of Time.[30]  Plaintiff argues that Defendants' amended

answer should be struck and a default judgment should be entered

against them.[31]

Defendants state that their failure timely to answer

Plaintiff's new Complaint was due to a miscommunication when new

counsel was assigned that resulted in a failure to calendar the

deadline, and that the error went unnoticed because there was no

activity in the case at the time.[32]  Indeed, no deadlines passed in

the interval, and none is impacted by the Amended Answer having

been filed two months ago.  In short, Plaintiff has not identified

any prejudice caused by the delay.[33]  Under these circumstances, it

---

[29] Document No. 16.

[30] Document Nos. 42, 47.

[31] Document No. 46.

[32] Document No. 47 at 2.

[33] Plaintiff accuses Defendants of "intentional delay and 'sandbagging' of Plaintiff [that] has resulted in Plaintiff exposing his strategies and legal arguments to the Defendants" based on his responses to other Defendants' motions to dismiss, and argues that "[t]his has given the Defendants the undue advantage of being able to lay in wait, and then determine whether Plaintiff may be able to defeat any motion to dismiss they may have decided to advance."  Document No. 46 at 2-3.  Plaintiff's suspicions lack reasonable foundation, however, inasmuch as Defendants answered on the merits and do not seek to dismiss Plaintiff's claims against them.

is therefore in the interest of justice to permit the late amended answer. *See* <u>S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA</u>, 315 F.3d 533, 536 (5th Cir. 2003) (in the context of untimely motions to amend pleadings, court should consider (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice); *see also* <u>Amberg v. Fed. Deposit Ins. Corp.</u>, 934 F.2d 681, 686 (5th Cir. 1991) ("The Federal Rules are diametrically opposed to a tyranny of technicality and endeavor to decide cases on the merits.  Strict enforcement of defaults has no place in the Federal Rules."); <u>E. F. Hutton & Co. v. Moffatt</u>, 460 F.2d 284, 285 (5th Cir. 1972) ("The entry of judgment by default is a drastic remedy and should be resorted to only in extreme situations.  It is only appropriate where there has been a clear record of delay or contumacious conduct.") (internal citations omitted).

Plaintiff's Objections to Defendants Jauregui, Barnes, and Smith's First Set of Interrogatories and Motion for Protective Order (Document No. 49) is premised on Defendants having filed their Amended Answer late.  This is not good cause to preclude Defendants from serving Interrogatories, and therefore Plaintiff's motion is denied.

Also pending is Defendants Jauregui, Barnes, and Smith's Unopposed Motion to Correct Docket Report (Document No. 50), which is denied as unnecessary because the current Docket Report accurately identifies the current parties and those who have been terminated.

Also pending is Plaintiff's Request for "Docket Entry of Default" Against Defendants Eric Pierson and Southeast Texas Transitional Center (Document No. 54), to which Defendants Eric Pierson and Southeast Texas Transitional Center have filed their response in opposition accompanied by their Amended Answer.[34] Defendants Eric Pierson and Southeast Texas Transitional Center more than two years ago answered Plaintiff's Original Complaint, the allegations in which as to these Defendants are substantially the same as those in Plaintiff's First Amended Complaint. Just as above with Jauregui, Barnes, and Smith, these two Defendants have never indicated any intent other than to defend this case on the merits. Again, no prejudice has resulted in the late filing, the entry of a default judgment is unwarranted under these facts, and Defendants Pierson's and STTC's Amended Answer at Document No. 56 is deemed filed as of April 21, 2015. *See* <u>Amberg</u>, 934 F.2d at 686; <u>Hutton</u>, 460 F.2d at 285.

---

[34] *See* Document No. 55.

Finally, Defendant Dr. Nicholas Edd moves for leave to obtain discovery on the limited issue of qualified immunity.[35] The motion is unopposed.   Other parties have also asserted the defense of qualified immunity.   Accordingly, the parties to this case within 90 days after the due date by which all Answers must be filed by Defendants who have not previously answered on the merits, may conduct limited discovery only upon those matters bearing directly upon Defendants' defenses of qualified immunity.

V. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Taylor's Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(1) and 12(b)(6) (Document No. 31) is GRANTED IN PART as to Plaintiff's claims against Defendant Taylor in Counts I, V, and VI, which claims are DISMISSED without prejudice for lack of subject matter jurisdiction, and as to Count III, which is DISMISSED with prejudice for failure to state a claim.   Defendant Taylor's motion is otherwise DENIED, and Plaintiff's claims against Taylor in Counts II, IV, and XI remain for adjudication.   It is further

---

[35] Document No. 57.

21

ORDERED that Defendants Jauregui, Barnes, and Smith's Motion for Leave to File Amended Answer Out of Time (Document No. 47) is GRANTED and Plaintiff Barbee's Objections, Motion to Strike Defendants Jauregui, Barnes, and Smith's First Amended Answer, and Motion for Entry of Default Judgment Against the Defendants (Document No. 46) is DENIED; Plaintiff's Objections to Defendants Jauregui, Barnes, and Smith's First Set of Interrogatories and Motion for Protective Order (Document No. 49) is DENIED, and Plaintiff's responses to Defendants' Interrogatories shall be served within 30 days after the date of this Order; Defendants Jauregui, Barnes, and Smith's Unopposed Motion to Correct Docket Report (Document No. 50) is DENIED as unnecessary; Plaintiff Barbee's Request for "Docket Entry of Default" against Defendants Eric Pierson and Southeast Texas Transitional Center (Document No. 54 ) is DENIED, and Defendants Eric Pierson's and Southeast Texas Transitional Center's Motion for Leave to File Amended Answer (Document No. 55) is GRANTED, and their Amended Answer at Document No. 56 is deemed filed as of April 21, 2015; and Defendant Edd's Motion for Leave to Conduct Limited Discovery (Document No. 57) is GRANTED; and, after all Defendants who have not previously answered on the merits have filed in this case their Answers (**which answers are due 21 days after the date of this Order**), all parties are GRANTED leave to conduct limited discovery only upon those matters

bearing directly on Defendant Edd's and various other Defendants'
defense of qualified immunity.

The Clerk will enter this Order, providing a correct copy to
all parties of record.

SIGNED at Houston, Texas, on this _11th_ day of September, 2015.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE